2bu278
108   417

CASE 71—PETITION ORDINARY—OCTOBER 1.

# Stewart, &c., of color, vs. Munchandler, &c.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

Frances Stewart, a woman of color, January 8, 1866, executed her note, due one day thereafter, for three hundred and eighty-four dollars. Frances and husband had been living together as husband and wife for about sixteen years, both being slaves until manumitted by the constitutional amendment, but never having been lawfully married. On the 19th day of April, 1866, they appeared before the clerk of the Jefferson county court and stated that they had lived together, and that they desired to continue to live together as husband and wife, and had recorded and obtained a copy of the certificate provided for by the act of February 14, 1866. Being sued on the note, Frances plead her coverture in defense and as a bar to the action. *Held by the court*—That, at the date of the contract and execution of the note sued on, Frances was not under the disability of a *feme covert*, but was, in legal contemplation, a single woman, able and competent to contract; and the statute subsequently enacted, with which she complied, and under which she claims protection, cannot operate so as to impair the obligation of a contract entered into by her when she was free and laboring under no disability, and divest the holder of the note of rights lawfully acquired. If Frances and her husband had, upon obtaining their freedom, solemnized their marriage in the manner prescribed by the Revised Statutes, their marriage would have been legal from that time forward. As between themselves, and for all purposes enumerated in the *act of February* 14, 1866, their marriage will relate back to the commencement of their union. But the effect of such marriage upon the rights of others, acquired in the *interim* between their emancipation and their legal marriage under said statute, is quite a different question.

BRUCE & RUSSELL,                                    For Appellants,

CITED—

*Act of Feby.* 14, 1866, *Myers' Sup.*, 734.

3 *Marshall*, 369.

2 *Rev. Stat., p.* 360, *sec.* 6.

Stewart, &c., of color, vs. Munchandler, &c.

ATCHISON & TWYMAN,                    For Appellees.

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

This action was brought by appellees' intestate against appellant to enforce the collection of a note for three hundred and eighty-four dollars, executed by her to intestate on the 8th of January, 1866, and due one day thereafter.

To the action appellant pleaded, that, at the date of said note, and for many years previous thereto, she was, and still is, a married woman, the wife of Henry Stewart, both colored persons.

The facts were agreed by the parties, which, in substance, are, that appellant and Henry Stewart were married by a colored preacher more than sixteen years before that time, without any license therefor from the county court; that they have ever since continued to live together as husband and wife; that they were slaves at the time of their marriage, and continued to be slaves until manumitted by the adoption of the amendment to the Federal Constitution; and, on the 19th of April, 1866, they went before the clerk of the Jefferson county court and took the following certificate from said clerk:

"This day Henry Stewart and Frances Tompkins, free persons of color, appeared before me, in my office, and stated that they had lived together as husband and wife for the period of about sixteen years, and that they desire to continue to live together as husband and wife."

And the law and facts then having been submitted to the court for adjudication, a judgment was rendered against appellant for the amount of the debt claimed and the costs, and she has appealed.

Before the adoption of the Revised Statutes the common law on the subject of marriage prevailed in Ken-

tucky, whereby cohabitation and recognition as husband and wife by a free male and female, regardless of color, who were competent and able to contract, was a legal marriage; but by the *Revised Statutes, chapter* 47, *article* 1, *subdivision* 4, *of section* 2, *2d volume, page* 4, marriages are declared void when not solemnized in presence of an authorized person or society.

"If this legislative enactment repealing the common law be applicable to the case of appellant, the cohabitation and recognition of herself and Henry Stewart as husband and wife while slaves, and after they were emancipated, however constant and sincere, could not have legalized their union as a valid marriage." (*Estill vs. Rogers, MSS. Op., winter term,* 1866.)

But by *section* 2 *of an act approved* 14*th of February,* 1866, all negroes and mulattoes who have heretofore lived and cohabited together as husband and wife, shall be taken and held in law as legally married, and the issue held as legitimate for all purposes; provided such persons shall appear before the clerk of the county court of their then residence and declare that they have been, and desire to continue, living together as husband and wife; when, upon the receipt of a fee of fifty cents, the clerk shall make a record of such declaration, and for an additional fee of twenty-five cents shall furnish the parties with a certificate of such declaration; said record or certificate shall be evidence of the existence of the marriage and the legitimacy of the issue born or to be born to said parties; provided the issue of customary marriages of negroes shall be held legitimate.

Appellant, with her recognized husband, having complied with the requirements of said statute, as evidenced by the certificate of the county court clerk before herein recited, the question is, whether that compliance with

the statute can operate retroactively so as to legalize their union from its commencement as a lawful marriage *for all* purposes.

Prior to the adoption of the constitutional amendment, Henry Stewart and appellant were slaves, and as such were incapable of contracting for any purpose; consequently, their cohabitation and recognition of each other while in a state of slavery as husband and wife could not make their union even a marriage *de facto;* and after they were emancipated, their union could not be treated as a legal marriage until they had complied with the act of February, 1866, *supra.* If they had, upon obtaining their freedom, solemnized a marriage in the manner prescribed by the Revised Statutes, it would, doubtless, have been a legal marriage from that time; but they failed to do that. As between themselves and for all purposes enumerated in the *act of February,* 1866, their mariage will relate back to the commencement of their union. But the effect of such marriage upon the rights of others, acquired in the *interim* between their emancipation and their legal marriage under said statute, is quite a different question.

If we are correct in the foregoing position, at the date of the contract, and the execution of the note sued on, appellent was not under the disability of a *feme covert,* but was in legal contemplation a single woman, able and competent to contract; and the statute subsequently enacted, with which she has complied, and under which she now claims protection, cannot operate so as to impair the obligation of a contract entered into by appellant when she was free, and laboring under no legal disability, and divest appellee of rights lawfully acquired. There is no such intention expressed in the act; nor is it necessarily inferable from a reasonable interpretation of its language.

This construction harmonizes it with the constitutional power of the Legislature, when a different interpretation would bring it within the inhibition of the Federal and State Constitutions.

Wherefore, the judgment is *affirmed*.