CASE 55—ACTION TO SET ASIDE DEED—MAY 4.

# Botts & Others v. Botts & Others,

## APPEAL FROM MONTGOMERY CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  REVERSED.

SLAVES—CUSTOMARY MARRIAGES—DESCENT AND DISTRIBUTION—BUR-
DEN OF PROOF.

Held:  1. The parties to a customary slave marriage acquired no
marital property rights by virtue of the act of February 14,
1866, where they did not thereafter make declaration of their
intention to continue the relation as provided for by that act.

2. The children of such a marriage, born before the passage of that
act, were legitimate, notwithstanding the failure of the parents
to comply with the provisions of the act.

3. Where children claim as heirs a share of their grandfather's
estate through their mother, who was the issue of a customary
slave marriage, the burden is on them to show that the mother
was born before the passage of the act of February 14, 1866, the
provisions of that act never having been complied with by her
father and mother.

Held by extended opinion:  1. Where a man and woman were pub-
licly married in a church by the pastor in charge, and there-
after lived together as husband and wife, and were so recog-
nized by the community in which they lived for nearly thirty
years, the presumption that they were legally married is con-
clusive in favor of the woman's rights as widow.

2. Where appellees failed to establish a material fact on which their
right to inherit depended, the court will, as they are infants,
depart from the ordinary practice, and allow them, on the re-
turn of the case, to take testimony to establish their right as
heirs.

ED. C. O'REAR & ROBT. H. WINN FOR APPELLANTS.

1. The marriage of negroes in a state of servitude is void.  Du-
maresly. v. Fishly, 3 A. K. Marshall, 368; Free Frank, &c., v.
Denham's Adm'r, 5 Litt., 330; Ewing v. Bibb, 7 Bush, 654.

2. Cohabitation and recognition of the married relation after the
enactment of the revised statute did not and could not constitute
a valid marriage in Kentucky.  Rev. Stat., chap. 47, art. 1, sec.

2, sub-division 4 and sec. 10 of same chap, and act; Estill v. Rogers, 1 Bush, 62; Harris, &c., v. Harris, &c., 8 Ky. Law Rep., 727.

3. The statutory remedy of February 14th, 1866, avails nothing unless its *proviso,* is complied with; and its remedy is the only method of legalizing the marriages of slavery. Estill v Rogers, 1 Bush, 62; Stewart v. Munchandler, &c., 2 Bush, 278; Brown, &c., v. McGee, &c., 12 Bush, 428; Dowd, &c., v. Hurley, &c., 78 Ky., 260; Acts 1865-6, chap. 556, sec. 2, page 37.

THOMAS TURNER, ATTORNEY FOR APPELLANT.

1. Marriage of slaves during slavery is utterly void and no marital rights accrue therefrom.

2. The appellees, Sarah Botts and Phil. Botts, never complied with the act of 1866, so as to legalize their slave marriage. Kuln v. Knauer, 7 B. Monroe, 130; Robbins v. Com., 6 Bush, 311; Whitesides v. Allen, 11 Bush, 23; Allen v. Allen, 8 Bush, 491.

H. R. PREWITT, ATTORNEY FOR APPELLEE.

1. Phoebe could not have legally married Philip Botts, she then being the wife of Ed. Smith.

2. Sarah Botts was the legal wedded wife of Philip Botts, she having been married in accordance with the customary matrimonial rights among slaves, and she lived with him, as his wife, up to his death. Brown v. McGee, 12 Bush, 428; Davis v. Meaux, &c., 15 Ky. Law Rep., 308; Whitesides, &c., v. Allen, 11 Bush, 23.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

Two questions are raised upon the appeal in this case. The first question to be determined is whether the appellant Phoebe Botts or the appellee Sarah Botts is the widow of Philip Botts, deceased, and as such entitled to the rights belonging to a widow; and the second, whether or not the children of Sarah Botts, alleged to be the offspring of her slave marriage with Philips Botts, are entitled to inherit from their alleged father. The evidence discloses this state of facts: Philip Botts, a negro slave, was married about the year 1852 or 1853 to Sarah, who was also a slave. They lived as husband and wife, as that relation

existed among slaves, until slavery was abolished, and for
a short time thereafter. After the cessation of this rela-
tion between Philip Botts and Sarah, she left this State,
and removed to Ohio, and about the year 1867 Philip Botts
married appellant in the Christian Church at Mt. Sterling,
the ceremony being performed by the colored preacher in
charge of that church. After this marriage, Philip Botts
and appellant lived openly together as husband and wife,
until his death, for about twenty-nine years. It is claimed
that this marriage was by authority of a license granted
pursuant to an act of Congress approved March 3, 1865,
establishing a bureau of refugees, freedmen, and aban-
doned lands, which was invested with the military con-
trol of the social relations of negroes; but no documentary
evidence to this effect is filed in the record, and the parol
evidence on this point is not at all conclusive. After his
marriage with appellant, and while he was living with her,
the evidence conduces to show that after the return of ap-
pellee from Ohio to Kentucky Philip Botts resumed oc-
casional illicit sexual relations with her, which were sur-
reptitiously sustained between them as long as he lived;
and appellee testifies that as a result of this intercourse
three children were born—her two sons, Sandy and Philip,
and a daughter, Mary J.; the latter of whom at the institu-
tion of this suit was dead, having left three children—
Lucy, Harry, and Leonora Crump. These children of Mary
J. were all infants under the age of fourteen years, and
all of them were made defendants in this proceeding. Ap-
pellee had a number of other children, who died before
Philip Botts, without leaving issue. She testifies that her
sons Sandy and Philip were born after the marriage of
Philip Botts to appellant. On the 14th day of February,
1866, an act of the Legislature was approved, which pro-

vides as follows: "All negroes and mulattoes who have heretofore lived and cohabited, and do now live together as husband and wife, shall be taken and held in law as legally married, and the issue held legitimate for all purposes; provided such persons shall appear before the clerk of the county court of their residence, and declare that they have been, and desire to continue, living together as husband and wife, when, upon the receipt of a fee of fifty cents, the clerk shall make a record of such declaration, and for an additional fee of twenty-five cents, shall furnish the parties with a certificate of said declaration. Said record or certificate shall be evidence of the existence of the marriage and the legitimacy of the issue born or to be born to said parties; provided the issue of customary marriages of negroes shall be held legitimate."

Previous to the passage of this act, the marriage of slaves gave no marital property rights, and the parties to such slave marriages subsequent to the passage of this act only acquired such rights by complying with the express provisions there of. In the case of Estill v. Rogers, 1 Bush, 62, Judge Robertson construed this act in a case where husband and wife were both slaves until emancipated by the constitutional amendment of December 19, 1865, having lived together in that relation for more than fifteen years preceding the death of the wife in April, 1866, and held that, having failed to comply with the requisitions thereof, they were not legally married, and the husband was not entitled to be her administrator. The same doctrine was announced in Stewart v. Munchandler, 2 Bush, 278. And as appellee and Philip Botts never complied with the provisions of the act of 1866, we are of the opinion that the marriage of 1852 did not give appellee

any status as his wife, or any property interest in his estate as his widow. But it was held in the case of Whitesides v. Allen, 11 Bush, 23, that the children of customary marriages of negroes born prior to the passage of the act of February 14, 1866, were legitimate, even though their parents had not since made the declaration of their intention to continue the relation as provided for by that act; and this doctrine was adherred to in Brown v. McGee, 12 Bush, 428. It is clear that neither Philip nor Sandy Botts has any interest in the estate sued for, as the evidence very clearly shows that both of these parties were born after the passage of the act *supra,* and after the marriage of Philip Botts to appellee. See Allen v. Allen, 8 Bush, 490. But the testimony is not at all clear as to the date of the birth of appellees, Lucy, Harry, and Leonora Crump. Whether they were born before or after the passage of the act of 1866 is not disclosed, and, as their right to recover in this proceeding depends upon this fact, and the burden of the proof is upon them to show it, which they have failed to do, the judgment must be reversed, and cause remanded for proceedings consistent with this opinion.

On May 22, 1900, Judge Burnam delivered the following extended opinion in this case:

We have been asked to extend and make more definite the opinion heretofore filed in this case, defining the rights of the appellant Phoebe Botts and the appellees, Lucy, Harry and Leonora Crump. As stated in the original opinion, the evidence of the legal authority authorizing the marriage of Philip and Phoebe Botts was not absolutely conclusive, as there was no documentary evidence offered on this point, and the parol testimony as to the authority under which their nuptials were celebrated is somewhat

indefinite, but these facts are clearly established: After
the abolition of slavery they were publicly married in the
Colored Christian Church at Mt. Sterling by the pastor in
charge thereof. That thereafter they lived together as
husband and wife openly and notoriously for nearly thirty
years, and were so recognized by the community in which
they lived, and by their friends and associates. "Because
of the high favor in which marriage is held by law, we have
transmitted to us the special maxim, '*Semper praesumitur
pro matrimonio.*' When a man and woman live together as
husband and wife, the law will hold them to be such, even
against strong probabilities that they are not, especially
when a ceremony of marriage is shown to have been cele-
brated between them; the presumption being that it is
valid, unless some distinct and special fact clearly appear
in the particular case to the contrary." 1 Bish. Mar., Div.
& Sep., sec. 77. Records of marriages are frequently de-
stroyed, and it is often impossible to prove them by per-
sons who were present at their solemnization; and largely,
therefore, in the practice of our tribunals, marriages are
proven by presumptions, which, originating in natural
reason and justice, have been found to accord with the
reason and justice of the law, and indispensable in judi-
cial affairs. It therefore follows that the reputation that
the parties are married, and that they lived together as
husband and wife, and are treated and received as hus-
band and wife among their friends and neighbors, are facts
sufficient to raise a strong presumption of the validity of
the marriage between them, and, in the absence of clear
testimony conducing to show that they were never legally
married, must be deemed conclusive. And, under the facts
in this case, we think this presumption must be indulged
in favor of the appellant Phoebe Botts, and she is entitled

to receive that portion of the estate of her deceased ·husband secured to ·widows ·by law. The testimony in the case ·does not show the date of the birth of the mother of appellees Lucy, Harry and Leonora Crump. If she was· born prior to the passage of the act of February 14, 1866, and was the issue of the slave marriage between Philip **and** Sarah Botts, they are legitimate, even though their grandparents did ·not make the declaration of their intention to continue the relation as provided by that act (see Whitesides v. Allen, 11 Bush, 23); and, in view' of the fact that they are infants, the court will depart from the ordínary practice, and allow testimony to be taken on this point, with a view of establishing their rights to the property left by Philip Botts—subject, however, to the interest of his ·widow, Phoebe Botts, therein.