CASE 16.—ACTION BY DOCK SMITH AGAINST WILLIAM
    LINDSEY'S DEVISEE TO RECOVER AN INTEREST
    IN A LOT.—December 18.

# Lindsey's Devisee v. Smith

Appeal from Owen Circuit Court.

J. W. CAMMACK, Circuit Judge.

Judgment for plaintiff, defendant appeals — Affirmed.

1. Marriage—Proof—Reputation—Slaves.—Under the rule that
    marriage may be proven by reputation, evidence that plain-
    tiff's mother and father sustained the relation of husband
    and wife after the custom of negro slaves, and that they
    were reputed by their associates and acquaintances to have
    been so married, was admissible to prove marriage in fact.
2. Same—Solemnization—Evidence—Slaves.—Since marriage may
    be proved by a record or by persons who were present at
    the ceremony, evidence of a witness who had personal knowl-
    edge that a marriage ceremony had been performed between
    plaintiff's father and mother who were slaves by a preacher
    of their race, and was what was commonly known as a negro
    marriage, was competent to prove marriage in fact.
3. Evidence—Parentage—Proof—Reputation.—Under the rule
    that parentage may be proved by reputation, evidence of
    plaintiff, the son of slave parents, as to his parentage by
    reputation arising from claims of his putative father and
    mother, was competent.
4. Slaves—Right of Inheritance—Statutes.—Act. Feb. 14, 1866
    Laws 1865-66, p. 37, c. 556), legitimizing the issue of mar-
    riages contracted in slavery, and legalizing the relation of
    husband and wife assumed by men and women in slavery, if
    continued after freedom and acknowledged before the county
    court clerk, etc. contemplated giving the right of inheritance
    where by nature it belonged, whatever the parent might sub-
    sequently do, and to afford an opportunity to former slaves

Lindsey's Devisee v. Smith.

to continue their matrimonial engagements as legally as if they had been authorized by law when assumed.

5. Same—Slave Marriages—Inheritance—Effect of Statute.— Under Act Feb. 14, 1866 (Laws 1865-66, p. 37, c. 556), legitimizing the issue of slave marriages, where a slave was twice married during slavery and according to the custom of slaves, the statute operated alike on the issue of both marriages and conferred on them the right of inheritance.

6. Adverse Possession—Hostile Nature of Claim.—Where a widow occupied certain land as widow only, and did not claim adversely to her husband's children, and a third person, who purchased an interest in the land, took subject to the widow's claim and acted as her agent in renting the property, the claim of neither was adverse to the heirs of the husband, and her possession was not such as to start the statute of limitations against their rights in the property.

7. Marriage of Slaves—Validity.—Prior to Act Feb. 14, 1866 (Laws 1865-66, p. 37, c. 556), authorizing marriages between slaves, such marriages were illegal for any purpose.

8. Divorce—Validity of Marriage—Slaves.—Slaves being incapable of contracting marriage prior to Act Feb. 14, 1866 (Laws 1865-66, p. 37, c. 556), authorizing it, they could not be legally divorced.

9. Slave Marriages—Legitimizing Issue—Statutes.—Act. Feb. 14, 1866 (Laws 1865-66, p. 37, c. 556), legitimizing issue of slave marriges, did not require that the issue, in order to be legitimate, must have resulted from a monogamous marriage only.

10. Slaves—Issue—Right of Inheritance.—Act March 16, 1898 (Laws 1898, p. 102, c. 39), authorizing the issue of slave marriages to inherit, but providing that the act should not apply where the property of either ancestor has passed to innocent purchasers or has been previously distributed by order of a court of competent jurisdiction, does not apply so as to divest rights of inheritance previously accrued.

11. Appeal and Error—Reversal—Grounds.—A judgment will not be reversed mainly to correct a technical omission in pleading not going to the merits which has been cured by proof under Civil Code Prac., section 134, authorizing amendments at any time in furtherance of justice, etc., and requiring disregard of any error not affecting the substantial rights of the adverse party.

BOTTS & PERRY and W. B. MOODY for appellant.

1. Appellee was not the issue of a customary negro marriage,

nor of parents who lived and cohabited together as husband and wife to each other, but was an illegitimate child and could not and did not inherit from Alfred Smith, his alleged father.

2. In no event could appellee have inherited one-third, or more than one-twelfth, of the parcel of land. For if he is capable of inheriting from Alfred Smith, there were at least eleven other children as much entitled as he.

3. If it were conceded that appellee was the legitimate child of Alfred Smith he did not take an interest in the aforesaid parcel of land, under section 1399a of the Kentucky Statutes, because one-half of the land had been sold under execution before that statute was enacted, and the whole of it had passed into the hands of innocent purchasers before he made any claim to it.

### AUTHORITIES CITED.

Act Ky. Legislature, February 14, 1866; Ky. Stats., sec. 1399a; Allen v. Allen, 8 Bush 492; Ewing v. Bibb, 7 Bush 656; Brown v. McGee, 12 Bush 432.

CHARLES STROTHER for appellee.

Under the rule stated in the beginning of this brief, will this court find from this proof that appellee was begotten in adultery or fornication, and, therefore, not only deny to him the right to recover this pittance of the estate of his dead father, but further brand him a bastard, rob him of the fond memory of his father and mother and leave him, in the evening of life, to reflect on the one as a libertine and the other as a prostitute? A thousand times better resolve the doubt, if any, against the appellant, whose estate will suffer no loss, than to overthrow the sober conclusions of the chancellor and inflict upon this aged man such injury and injustice.

### AUTHORITIES.

Ky. Stats., sec. 1399a; Doud and Wife v. Hurley, 78 Ky. 260; Dannelli v. Dannelli, 4 Bush 51; Cross, &c., v. Froman, &c., 89 Ky. 318.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Affirming.

Appellee Dock Smith is a negro, born of slave

parents. His father's name was Alfred Smith. His mother's name was Ailsie. They were owned by different masters. They were married after the manner of slaves, and appellee is issue of that marriage. Ailsie died, and Alfred married again before the Emancipation Proclamation, and had other issue born, two children. After the War, he continued to live with his last wife, and until his death in the 70's. In the meantime he had purchased a house and lot of ground near Owenton upon which he lived as a homestead until his death. After the death of Alfred, his widow rented out the property, part of the time through Mr. Wm. Lindsey, a lawyer at Owenton. Mr. Lindsey had in the meantime purchased an undivided interest, described as being a one-half interest in the property, subject to the widow's homestead, from one of Alfred's last children, sold under an execution. Later he purchased the interest of the other of the last children, which was described as being a one-half interest in the lot. It may be assumed he was ignorant of Dock's parentage or claim of title. Alfred's widow died recently, whereupon appellee brought this suit against Mr. Lindsey's devisee to recover a one-third interest in the lot.

The first question is: Was there proof of the marriage between Alfred and Ailsie? Appellee testified that he was about eight years old when his mother died; that at that time she and Alfred sustained the relation of husband and wife after the custom of negro slaves; and that they were at that time reputed by their associates and acquaintances to have been so married. Mrs. Reed, who was related to Jones, the owner of Ailsie and resided in the family before the War, testified: "I think they were married. They were married by niggers. I think a nigger preacher.

I don't think it was lawful.'' Marriage may be proven by a record, by the testimony of persons who were present at the ceremony, or by reputation. Greenleaf, Ev., 107; Botts v. Botts, 108 Ky. 414, 56 S. W. 677, 691, 22 Ky. Law Rep. 109, 212; 1 Bishop, Marriage and Divorce, 177. The testimony of appellee was competent and relevant. He was a competent witness to prove the reputation that Alfred and Alsie had been married. Mrs. Reed's testimony that she had personal knowledge that the ceremony between those two slaves had been performed by a preacher of their race, and was what was currently known as a negro marriage, was, of course, competent. But whether she undertook to testify of her personal knowledge, or of the reputation of the fact of their marriage, her testimony is equally relevant to prove the fact, and is sufficient. Any matter which may be proved by reputation must from the necessity of the case grow more difficult of such establishment as the years go by. Hence after a great while slighter evidence to prove the fact will be required, so that it tends reasonably to establish its existence. Due allowance will be made for the difficulties besetting the conditions. So parentage may be proved by reputation. 1 Greenleaf, Ev. 104. There is no other way after the lapse of more than a generation to establish the fact and date of births of those in slavery, as no legal registry was then required, and as they were generally illiterate, and did not, probably, keep a family record of such events. The testimony of Dock as to his parentage by the reputation established by the claims of his putative father and mother was competent, and is sustained by the testimony of Mrs. Reed. After the emancipation of negro slaves, the Legislature of this State provided for

legitimizing the issue of marriages contracted in slavery, as well as for legalizing the relation of husband and wife assumed by men and women when in slavery, if continued after their freedom, and acknowledged before the county court clerk as allowed by the statute. Act Feb. 14, 1866 (Laws 1865-66, p. 37, c. 556). The purpose of this legislation was twofold. One was to make legitimate the issue of every marriage contracted in slavery when entered into after the custom of the slaves. That was to enable such issue to inherit from either parent, and was entirely without reference to the subsequent conduct or declaration of the parents. It related solely to an event in the past, and was an enabling statute, pure and simple. Estill v. Rogers, 1 Bush, 62; Whitsides v. Allen, 11 Bush, 22. The other purpose looked to the future mainly. While it recognized that, when contracted, such slave marriages had no legal effect, either then or subsequently, as validating the connubial relation sustained by the parties, but as after freedom they had become citizens, who were amenable alike to the laws of the State concerning adultery, and to those orderly regulations of society whereby a fixed and legal status of marriage is provided for and favored, provision was made for both a record and the creation of a permanent status of the marriage. The one purport of the statute may have had no connection with the other, and one may have been effected entirely without reference to the other. The law contemplated giving the right of inheritance where by nature it belonged, whatever the parent might subsequently do, and then to accord an opportunity to former slaves joined in conscience and from choice in matrimonial bonds to continue therein as legally as if it had been authorized by law when as-

sumed. As both of Alfred's marriages had been contracted during slavery, and were after the custom of slaves, the statute as to right of inheritance by former slaves was operative alike upon all his issue of both marriages, and his three children inherited from him after his death, the appellee taking an undivided third.

It is contended by appellant that appellee's right is barred by the statute of limitations; it being asserted that those under whom she claimed had been in the actual adverse possession of the lot for more than 15 years before this suit. The proof is that the widow of Alfred, although she and he had not filed the declaration provided by the act of February 14, 1866, and therefore not his widow in law, continued to claim and assert title to the homestead as widow only until her death. Her claim then was not adverse to his children, but, although unfounded in law, was in fact amicable to their title. Mr. Lindsey bought subject to her claim, and acted as her agent in renting her property. So his claim and acts of ownership were not adverse to appellee or to Alfred's children. The statute does not apply because the character of the possession was in fact not such as set it running notwithstanding it might have been.

It is asserted that Alfred had married another slave woman before his marriage to Ailsie, and that he continued to sustain toward her the relation of husband, and she bore him several children before the marriage to Ailsie. The proof upon this point is not satisfactory. It is neither alleged nor proved that any such issue or descendant was living when this suit was filed. But, if it should be conceded that he was so married, that fact detracts nothing from appellee's standing in the case. Slave mar-

Lindsey's Devisee v. Smith.

riages were not legal for any purpose before 1866. Slaves were incapable of contracting for any purpose. As they could not be married, they could not be legally divorced. Whatever fidelity they displayed to the obligations thus assumed was such as their own conscience or tastes, or the discipline of their masters enforced. Doubtless their moral obligation sat lightly upon them in many instances, and other restraints may have been equally lax. Still it is entirely probable that in most instances there was a an unwritten code of ethics prevailing that required that such relation once assumed was not to be abandoned lightly or without some reason, and promiscuous intercourse suffered or tolerated. Still conditions similar to and doubtless fashioned upon the prevailing laws of the white race in the same community that would justify a severance of the marital tie as among the latter were held to justify the same action among the slaves. Perhaps, and not unnaturally, it was regarded more loosely. But, however that might be, there is nothing in the statute of this State noticed above that predicates the right of inheritance of slave issue upon the fidelity of their parents to each other, or upon the idea that they must have been the issue of a monogamous marriage. The statute is as broad in its humane purpose to legitimize all slave births when the parents at the time of conception sustained, according to the custom among slaves, the relation of husband and wife, as the very conditions it sought to deal with. It would have defeated the real purpose of the Legislature to have exacted a nicety of conduct among a race situated as was the negro slave, and which situation could not at the time have been foreseen in its subsequent legal effect. The effort was not to enforce morality or offer a future

premium for virtue. It was to relieve from a legal misfortune a class nowise responsible for their state. It is of kin to the existing statute legitimizing bastards whose parents subsequently marry.

But it is contended that the act of March 16, 1898, (Laws 1898, p. 102, c. 39), applies to defeat appellee's claim. This act was in line with the act of February 14, 1866. It contains this proviso: "And provided further, that this act shall not apply in any case where the property of either father or mother has passed to innocent purchasers, or heretofore divided out and sold, or distributed by order of any court of competent jurisdiction." We think it sufficient to say of this act, as well as of its provisos, that appellee's rights are not affected by it. His rights had attached long before, and it was not competent for the Legislature to deprive him of them by putting limitations or conditions upon them.

Finally, it is contended that appellee's petition in this case was bad on demurrer because it failed to allege that Alfred died intestate. Perhaps. But upon issue found and proof heard it develops that appellee was his heir at law, and no will is hinted at. If there had been a will, it was of necessity of record in Owen county. If not of record, it is now too late to probate it. So the decedent died intestate. This court will not reverse a judgment upon issue and all proof heard mainly to correct a technical omission in pleading, not going to the merits of the case, and which the proof has cured. No substantial end of justice would be met by doing so. It was to prevent just such practice that section 134, Civ. Code Prac., was in part adopted.

The judgment is affirmed.