## Williams v. Williams.

(Decided October 23, 1928.)

## Appeal from Powell Circuit Court.

1. Bastards.—Illegitimacy will not be presumed after death of parties.
2. Slaves.—Under Ky. Stats., sec. 1399a, providing that children of colored persons living together as husband and wife shall be lawful children and legal heirs of parents, entitled to inherit property of parents, colored children of deceased slave, always acknowleged by decedent to be his children, and who were children of woman with whom decedent lived as wife, held entitled to share in decedent's estate, especially after their death leaving descendants.
3. Champerty and Maintenance.—Possession of life tenant held not adverse to remainderman during continuance of life estate, and hence deeds under which life tenant claimed estate were not objectionable as champertous.

J. SMITH HAYS for appellant.

C. F. SPENCER for appelleee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Nelson Williams owned at his death 40 acres of land, worth less than a thousand dollars, on which he resided. His widow, Ann Williams, survived him, also a son, Sidney, who died in 1908, unmarried and without issue. Nelson Williams was a slave before slavery was abolished. Emily Curry also was a slave, the property of Elias Curry, before slavery was abolished. He died in 1871, but he kept a record of the births and deaths of his children and his slaves. In that record it appears that there were born to Emily Curry the following children: Moses, born January, 1839; Martha, born June, 1841; Ailsa, born October, 1843. This case turns on whether these people may be adjudged to be the legal heirs of Nelson Williams, who died in 1900. Emily Curry died in 1909; all three of the children died, but after the death of Sidney, leaving descendants.

Miss Hannah Curry, a daughter of Elias Curry, and 71 years old, testified, in substance, that her father and mother told her that Nels was the father and Emily the mother of these children, but they were not living to-

gether at her earliest recollection. It was before her time.

Clay Cunningham, who was 64 years old, testified that Nelson Williams claimed Aunt Emily was his wife. He claimed to have three children by her, Moses, Martha, and Ailsa; that he had been in his presence when he was among them, and he claimed them as his children.

George Ann Williams gives similar testimony. She says that Nelson Williams would come to see Mose and stay as high as two weeks at a time, and that he said these three were his children of his first marriage. She also makes this answer, speaking of Nelson and Emily:

"Q. Were they considered married by the people who knew them when they lived together as man and wife.

"A. Yes, I have always heard them say so, they was."

There is other like testimony which is uncontradicted. Section 1399a, Kentucky Statutes, provides:

"That in all cases where, during the time of slavery in Kentucky, any male and female colored persons lived together and cohabited with each other as husband and wife to each other, and any child or children was the result of such cohabitation, such child or children shall be held to be the lawful child or children and legal heirs of both the father and mother in all cases where the father or mother shall die or shall have died the owner or owners of any real or personal property, and legally entitled to inherit such property of both father and mother."

Under this statute the court in Lindsey v. Smith, 131 Ky. 176, 114 S. W. 779, holding a child of a slave marriage the legal heir, said:

"Any matter which may be proved by reputation must from necessity of the case grow more difficult of such establishment as the years go by. Hence after a great while slighter evidence to prove the fact will be required, so that it tends reasonably to establish its existence. Due allowance will be made for the difficulties, besetting the conditions. So

parentage may be proved by reputation. 1 Greenleaf, Ev. 104. There is no other way after the lapse of more than a generation to establish the fact and date of births of those in slavery, as no legal registry was then required, and as they were generally illiterate, and did not, propably, keep a family record of such events. . . .

"The law contemplated giving the right of inheritance where by nature it belonged, whatever the parent might subsequently do. . . ."

No question is better settled than that illegitimacy will not be presumed after the death of the parties. In Johnson v. Johnson, 30 Mo. 88, 77 Am. Dec. 603, the court thus well stated the rule:

"It is well settled, as a general proposition, that a marriage valid according to the law or custom of the place where it is contracted is valid everywhere; Story's Confl. L., sec. 113; 2 Greenl. Ev., sec. 460. It is equally clear, both upon authority and upon general principles of public policy and natural equity, that where the legitimacy of children is called in question, especially after their death and after a great lapse of time, every reasonable presumption is indulged in favor of legitimacy. Very slight circumstances have been held sufficient to authorize a court or jury to find the existence of a marriage."

"The presumption of legality is said to be one of the strongest known to the law, especially where legitimacy of children is involved, for the law presumes morality and not immorality; marriage and not concubinage; legitimacy and not bastardy." 18 R. C. L. p. 416, sec. 39.

Under these principles, it cannot be held that these children, who were always acknowledged by Nelson Williams to be his children, were not entitled to share in his estate at his death, for this would be to disregard entirely the salutary presumption of the common law in favor of legitimacy after the death of all the parties.

Appellee also insists that the deeds under which the appellant claims were champertous, but she was a life

tenant, and her possession was not adverse to the remainderman during the continuance of her life estate. She was also a joint tenant with them, and as such owned one-fourth of the land. On the return of the case to the circuit court, the judgment dismissing the plaintiff's petition will be set aside, and a judgment will be entered adjudging to the appellee a life estate in the land and one-fourth of the remainder, and adjudging to appellant three-fourths of the remainder, subject to her life estate.

Judgment reversed, and cause remanded for further proceedings as above indicated.