## Rankin v. Dunn.

(Decided May 13, 1932.)

FOWLER, WALLACE & FOWLER for appellant.

SPENCE S. CARRICK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Stephen Dunn, Sr., before his death on February 16, 1923, resided in Lexington, Ky., and had done so since 1875. On the 5th day of December, 1917, he executed his will in which he bequeathed to his surviving widow, the appellee and plaintiff below, Sidney Mays Dunn, all of his personal property, and also devised to her for and during her life his residence and the lot on which it stands on North Upper street in Lexington, and in which he and plaintiff had resided since their marriage in 1875. The remainder interest in that real estate he devised in fee-simple to his granddaughter, Sidney Dunn Hardin, but she died in 1921 leaving no issue or descendants, and which produced a lapsing of the devise of the remainder interest to her in testator's real estate, and left it as undevised property to be shared by testator's heirs. At the time of the execution of the will, testator had an infant grandson, Steven Dunn, Jr., who was the son of William Dunn, a child of testator by Leanna Royster (or Leanna Green or Leanna Riston, they being names by which she was sometimes referred to), his wife under and by virtue of a slave marriage which it is alleged occurred prior to February 14, 1866, at which time our first statute relating to legitimatizing the issue of such marriages between slaves was enacted. It is chapter 556, page 37, of the General Public Acts of 1865-66, but which is not now carried in its entirety in our current edition of Carroll's Kentucky Statutes, but which remained in the form of its original enactment until 1898, when some portions of it were superseded by chapter 39, page 102 of the Acts of that year, and which is now sections 1399a and 1399b-2 of our present Kentucky Statutes; the latter of which was also re-enacted in 1910 by chapter 70, page 207, of the Session Acts of that year, and which latter statute included section 1399b-1 of our present Kentucky Statutes. So that our present statutory law with referenc to the legitimacy of children born as the result of a slave marriage is to be found in sections 1399a, 1399b-1, and 1399b-2 of the 1930 edition of Ken-

tucky Statutes, and which constituted the whole law on the subject at the date of testator's death in 1923.

After Stephen Dunn, Jr., became of age, he and his wife, whom he had married in the meantime, executed a quitclaim deed to plaintiff, Sidney Mays Dunn, whereby they conveyed to her all of the remainder interest of Stephen Dunn, Jr., in and to the decedent's real estate, which is all of the property involved in this litigation. Thereafter plaintiff filed this action in the Fayette circuit court against all persons claiming any interest in the real estate of her deceased husband, including the appellant, Pearl Rankin, as one of the defendants below. All the other defendants, except her, answered and relinquished any interest that they might have in and to the involved property, but she answered and made her answer a cross-petition, and averred therein that she was the daughter of decedent and that her mother was a colored woman named Paulina Ellis, with whom Stephen Dunn, Sr., formed a slave marriage relationship before the enactment of the 1866 statute above referred to, and that by virtue of the terms of that statute, and all other substituted and amendatory ones following it, she became and is an heir of testator, and that he died leaving no other, and that she is entitled to inherit the property subject to the life interest of plaintiff given to her by the testator in his will. She denied that William Dunn, the father of Stephen Dunn, Jr., through whose deed plaintiff claims to have acquired the remainder interest in the involved house and lot, was a child of Stephen Dunn, Sr.; but, if mistaken in that, and if it were true that William Dunn, the father of Stephen Dunn, Jr., was the natural child of the testator, then appellant alleged in her pleading that he was begotten and was born as the result of relations contracted and entered into between the testator and William Dunn's mother, Leanna Royster, after the enactment and taking effect of the 1866 statute, supra, and for which reason he was a bastard and was not entitled to and did not inherit any interest in the property involved.

The prayer of her pleading was, that she be adjudged to be the sole heir of the testator, and as such entitled to the remainder interest in the involved property; but that if she was mistaken in William Dunn not being a legitimate child of the testator under our statutes, and if the court should adjudge him to have been such, then

she prayed that she be held to be a joint heir and entitled to a one-half undivided interest in remainder of testator's real estate. Following pleadings made the issue and upon submission, after extensive proof taken, the trial judge found that the testator and Leanna Royster entered into a common-law slave marriage with each other prior to either the freedom of the slaves, or the enactment of our 1866 statute, supra, and that they continued such relationship, living together as husband and wife after such events, and until the death of Leanna, which occurred in 1870. The court further found that William Dunn was born on January 1, 1868, as a result of that marriage and during its continuance, and that under the very terms of the statute, as construed by former opinions of this court, he (William Dunn) was an heir of and entitled to inherit from his father, Stephen Dunn, Sr., the testator in this case. The court further found as a fact that the relationship, if any ever existed, between Paulina Ellis, the mother of appellant, and Stephen Dunn, Sr., was formed and entered into long after the freedom of the slaves, and after the enactment of our 1866 statute referred to, and which was between the dates of the death of Leanna Royster in 1870 and the marriage of the testator to plaintiff herein in 1875, and that, since none of the statutes even attempt to make the issue of such a relationship, though conjugal, entered into after the enactment of the 1866 statute, legitimate, appellant was not an heir of the testator, and denied her claim to any interest in his estate. The judgment also quieted plaintiff's title as the sole fee-simple owner of the property, and complaining of it appellant prosecutes this appeal.

It can serve no useful purpose to incorporate in this opinion any of our statutes referred to, nor to take excerpts from any of our opinions construing them. The cases in which such opinons have been written are: Estill v. Rogers, 1 Bush 62; Stewart v. Munchandler, 2 Bush 278; Ewing v. Bibb, 7 Bush 654; Whitesides v. Allen, 11 Bush 23; Brown v. McGee, 12 Bush 428; Botts v. Botts, 108 Ky. 414, 56 S. W. 677, 961, 22 Ky. Law Rep. 109, 212; Hardin v. Hardin, 87 S. W. 284, 27 Ky. Law Rep. 899; Lindsey's Devisee v. Smith, 131 Ky. 176, 114 S. W. 779; Cabble v. Hawkins, 186 Ky. 114, 216 S. W. 2345; and Williams v. Williams, 226 Ky. 13, 10 S. W. (2d) 477. Those opinions, or at least some of them, deal with and determine questions not involved under the facts of this

case, but they also determine and hold that sections 1399a and 1399b-1 and 1399b-2, supra, of our present statutes intended to and did render legitimate for all purposes the issue of a slave marriage which was entered into according to the specified requirements of the 1866 statute, if they were begotten during the continuance thereafter, notwithstanding the issue may have been begotten and born after that date. Those opinions, or some of them, also hold (as the Statute plainly discloses) that an ostensible marriage relationship entered into after that date did not relieve the issue thereof from the status of bastardy, notwithstanding the parties were ex-slaves. Those opinions also determined that the issue of such a relationship, assumed, entered into and continued before the enactment of the 1866 statute, could inherit from their father, notwithstanding the parents failed to make their declaration before the county clerk of the county of their residence required by section 2 of the 1866 Act, but which is no longer carried in our Kentucky Statutes.

The earlier cited opinions held that such provision was only for the purpose of enabling the surviving spouse to such relationship, to obtain his or her distributable and inheritable share of their partner's estate upon the latter's death, and that a failure to comply with it would in no wise affect the inheritable status of the issue of such a marriage conferred upon him or them by the statute. Therefore, the two contentions made in this case by learned counsel for appellant of: (a) That William Dunn was not born until 1868, two years after the enactment of the 1866 statute, and (b), that there is no evidence of Stephen Dunn, Sr., and his slave wife, Leanna Royster, ever having made the proper declaration before the county clerk of the county of their residence, are entirely immaterial as having no bearing on the case. There remains to be determined only the two issues of fact, both of which the trial court found in favor of plaintiff, and which we think the testimony in the record clearly sustains.

Those issues are: (1) Whether or not the testator entered into a slave marriage with Leanna Royster before the enactment of the 1866 statute, and, if so, whether William Dunn was begotten by the testator during the existence of that marriage, and (2) the same inquiry with reference to the testator's relationship with Paulina

Ellis, and whether appellant was begotten by the testator as a result of that relationship if it should be found that it was of the nature and kind to constitute a slave marriage entered into during the existence of slavery.

It is but feebly contended that William Dunn is not the natural child of the testator. Without reciting the testimony, it is sufficient to say that there is overwhelming proof that he was begotten by the testator during the relationship he sustained with Leanna Royster, and that such relationship was contracted and entered into according to the forms of slave marriage before the enactment of the 1866 statute, though he was not begotten until after it was enacted. Abundant direct and express testimony found in the record established those facts, and it is fortified by entries made in the family bible kept by testator, wherein it was recorded that he was married to Leanna on December 26, 1863; that William Dunn was born on January 1, 1868; and that he died June 18, 1909. The bible record also shows that Leanna Royster (or Riston) died on March 3, 1870, and that plaintiff and the testator were married on the 22nd day of April, 1875. The verbal testimony of the witnesses for appellant, heard at the trial, when analyzed, did not contradict such bible entries. The only apparent conflict therewith, arising from their testimony, consists in the inaccuracies of dates referred to by them, and the length of time intervening between one date and that of another. For instance, some of them told about seeing appellant as a child "sometime" (no date given) after the Civil War, without fixing any date, and that she at that time "appeared to be" of a certain age, according to the opinion of the witness so testifying. But, even those witnesses are positive that the supposed conjugal relations between testator and appellant's mother occurred in Dick Breck's boarding house for negroes at a described location in the town of Richmond, Ky., while testator and appellant's mother were guests therein, and which all other testimony in the case conclusively shows was after the death of Leanna Royster in 1870, and between that date and the marriage of the testator with plaintiff in 1875, at which time they forthwith moved to Lexington, Ky., and purchased the property involved in this case.

It is strenuously argued by appellant's counsel that the testimony of her witnesses, though indefinite as to dates, plus the weight of presumption in favor of legiti-

macy, entitled their client to succeed in her contentions in this case; but we are unable to so conclude from the record. The strong presumption so invoked (and which has an important place in the law) is not a conclusive one, and is subject to be refuted by convincing testimony to the contrary. The court found that the refuting testimony was sufficient to have that effect, and we think that he correctly did so. However, if we were more doubtful upon the subject, we are admonished that, under the rule of practice in this court, findings of fact by a chancellor will not be disturbed on appeal if the evidence creates no more than a doubt as to what are the true facts, and we are unable to see that the findings of the trial court have even that much effect upon us, in the light of the entire testimony in the case.

Some criticism is made in one part of the brief for appellant of the probative force of the bible recordations to which we have referred, growing out of the fact that they were made long after the happening of some of them, and which was done because the original bible of the testator, in which such entries were first made, burned some 20 or 25 years before his death, and the one that was introduced upon the trial of this case was afterwards procured, and the entries therein were made at the instance of testator and under his supervision and direction. Such facts did not destroy the competency of the entries as relevant testimony in the case, but, at most, would only affect the weight to be given them by the court. However, another portion of the same brief relies implicitly upon the entry of the date of the birth of William Dunn for the purpose of proving that he was begotten after the enactment of the 1866 statute, and which fact, counsel insists, destroyed his legitimacy under that statute, as well as under all subsequent ones enacted by our Legislature. We have seen, however, that a contrary interpretation has been given to those various enactments by this court, and for which reason the fact so relied on by counsel cannot be given the effect contended for.

Perceiving no error prejudicial to the substantial rigthts of appellant, the judgment is affirmed.