# CHARLESTON

McSwegin v. Howard.

Submitted June 15, 1907.   Decided December 3, 1907.

1. Judgment—*Res Judicata.*
   A case of *res judicata* under the facts and circumstances stated in the opinion. (p. 96.)

2. Executors—*Accounting—Failure to Sell Land.*
   A will directs the executors to sell land, and give its proceeds, after payment of debts, to eight children, and directs that out of the share of one child $2,000 shall be paid to trustees to pay its interest to that child during life, and at her death the principal to be paid to her children. In a suit to settle the estate, marshal its assets and distribute them for the benefit of creditors and legatees, it is error to charge the executors with that $2,000 by absolute personal decree, by reason of their failure to sell the land, in advance of a sale of land by the court's decree, the land being the primary means of raising the money. (p. 97.)

Appeal from Circuit Court, Hancock County.

Bill by James D. McSwegin, administrator, against Adolphus P. Howard and others.   Decree for plaintiff, and Adolphus P. Howard and William Hewitt appeal.

*Reversed in part.   Remanded.*

G. B. Caldwell and John A. Campbell, for appellants.
John R. Donehoo and E. A. Hart, for appellee.

Brannon, Judge:

Robert Hewitt died in 1869, owning personal property and two tracts of land.   By his will he directed his executors, within three years after his death, "at the discretion of my executors," to sell that portion of his real estate east of W. O. run and the residue of his real estate, that portion lying west of W. O. run, he devised to his wife for life and at her death the land to be sold.   He charged his land with the payment of his debts, which amounted to a large sum, about $11,000.   He gave all of his personal and real estate left after payment of debts to his eight children equally, with the provision that out of the portion of his daughter, Elizabeth McSwegin, $2,000 should be by his executors paid to Adolphus P. Howard and R. Brown Hewitt to be

held in trust, the interest to be paid for the use and sup-
port of Elizabeth McSwegin during her life, and at her
death the principal to be paid to her children. The will
directed the executors to sell the land east of W. O. run
"within three years after my death at the discretion of
my executors;" but the codicil struck from the will the words
"within three years," and substituted in their place the
words "at any time." The will, by directing a sale of the
lands, converted them into personalty under a familiar rule;
but the children, including Elizabeth McSwegin, recon-
verted them into realty by an agreement that three of
Hewitt's sons should remain on the land and cultivate
and manage it and pay off the debts of their father and
keep the land in the family. All except two of the chil-
dren remained on the farm. And under this agreement the
sons did take possession and manage the farm and pay off
thousands of dollars of debts. Elizabeth McSwegin was a
party to this arrangement. This arrangement continued
for many years, until, at least, 1905. James D. McSwegin, hus-
band and administrator of Elizabeth McSwegin, who died 20th
of March, 1890, filed a bill in April, 1890, in the circuit court of
Hancock county against the executors and all interested under
the will to ascertain and state an account of all the estate of
Robert Hewitt, and its value, and of all receipts and dis-
bursements by the executors, and of the rents and profits
of said real estate, and to settle the accounts of the execu-
tors, and to compel a sale of the real estate according to
the directions of the will, and to make payment and distri-
bution of the estate among those entitled. The bill charged
that no sale had been made by the executors. The bill
charged that it was the duty of the executors to have sold
the reality within reasonable time, but they did not do so,
and charged the executors with negligence of their duty,
and that they had not paid to the said trustee said $2,000,
and sought to charge them with it. Elizabeth McSwegin
left two children, Edwin G. McSwegin and Alice H. Mc-
Swegin, the latter being an infant. The court made a ref-
erence to a commissioner to report the value of the real
estate at the death of Hewitt, and for three years there-
after, its rental value, and the persons who had occupied
and received its rents and profits, and the amount chargea-

ble to them, and the amount due to each of the devisees, and the debts of said testator, and what had been paid to Elizabeth McSwegin as interest on the $2,000 fund provided for her use and the use of her children by the will, and what, if anything, had been paid to her children on account of principal of said fund. The commissioner made a report. The executors A. P. Howard and William H. Hewitt filed an answer stating that their possession was under the agreement aforesaid and not under the will as executors and denied having received the rents and profits under the will and contesting, in short, their liability to Mrs. McSwegin or her children for the said $2,000 on facts stated at large in their answer. To the commissioner's report various exceptions were filed by the plaintiff in the case, finding various faults in the report. Among them that the commissioner failed to charge the executors with rents and profits of the land, and failed to charge them with the value of the land east of W. O. run as it was one year after Hewitt's death, and the value of the other tract at the death of his widow, and claiming that the executors were liable for failure to sell the land as demanded by the will. A decree was pronounced on the bill, former orders, the said report and the exceptions aforesaid, and depositions taken before the commissioner. This decree says that the court "doth accordingly, to the end that the principles involved in this cause may be settled, decide, and it is so adjudged, ordered and decreed that, as the executors of Robert Hewitt, deceased, defendants, are not chargeable with the value of real estate of which the said Robert Hewitt died seized, or with the rents and profits thereof, the exceptions are accordingly overruled." The decree further declared that "as to the Exception No. 11, the said commissioner did not err in failing to charge said executors with the value of the said land as claimed in this exception." That exception was for the failure of the report to charge them with such value. The cause was recommitted to the commissioner to make further settlement of the executorial accounts by annual rests, which was an omission in the report, and the decree further declared that in view of the Exceptions 8, 11 and 13 the commissioner should "retake and restate the said account in accordance with the principles hereinbefore laid down."

After this decree the case was dropped from the docket for over ten years, from April 1893. On the 8th of July, 1904, the cause was reinstated upon the docket of the court. On the 19th day of November, 1904, an order was made stating that as Edwin McSwegin and Alice McSwegin, the only heirs of Elizabeth McSwegin, were over the age of twenty-one years, they were made defendants, with leave to file their answers within thirty days, and the court stating that two former reports of commissioners were lost, the cause was referred to another commissioner of the court with the same instructions given to former commissioners. On the 23rd day of January, 1905, Edwin G. McSwegin and Alice H. McSwegin filed their answer setting up the will of their grandfather and seeking to make the executors liable for the said sum of $2,000. The executors filed exceptions to the answer. One ground of exception was that the matter of the liability of the executors therefor had been adjudicated by the former decree. Frank L. Bradley, commissioner, filed a report under the recommital order of the 19th of November, 1904. On the 18th of July, 1906, the court entered a decree, contrary to the decree of the 14th July, 1892, holding the executors Adolphus P. Howard and William Hewitt, liable, and giving personal decree against them in favor of the administrator of Edwin G. McSwegin (who had in the meantime died), and Alice H. McSwegin, each for $764.32. This decree is on account of the fund of $2,000 which under the will was to be raised out of the sale of the land and placed in the hands of trustees to be held, as above stated, in trust to pay the interest to Elizabeth McSwegin and the principal, at her death, to her two children. From this decree the executors have appealed. The decree held valid the agreement above spoken of by which the children of Hewitt kept the land instead of having it sold, but held it not binding upon the children of Elizabeth McSwegin. It held them not liable to other legatees on account of the land by reason of such agreement. The decree directed the sale of the land to pay some debts unpaid and for the benefit of the children under the will.

The only question which is to be passed upon by this Court upon the appeal of the executors is whether the decree against them for the said sum of $764.32 to each of the

McSwegin children is correct. We hold that it is not. First, the decree of the 14th day of July, 1892, upon this matter under issue and controversy made by the bill, answer, commissioner's report and exceptions thereto, was pointedly decided by the clauses of the decree above quoted. The question was as to the liability of the executors for their omission to sell the land, and whether they were chargeable with its value to Mrs. McSwegin and her children, and whether the executors should be held accountable for failure to sell the land and raise the $2,000 for deposit in the hands of the said trustees. That controversy was pointedly decided by the decree, and a full exoneration of the executors from the alleged liability declared by the decree. It is *res judicata* upon that question. The decree decided the principles of the cause between the executors and Elizabeth McSwegin and her children, they all being parties to the cause and the matter being involved in the cause. In plain intent and words it adjudged that no liability rested on the executors in favor of any one on account of the land. Right or wrong, it settled that matter. That decree was an appealable decree and no appeal was ever taken from it, but it lay unassailed at least more than twelve years up to the time when the children of Elizabeth McSwegin filed their answer. Appeal from that decree was then barred six times over, even if interlocutory; but as to this matter it was in nature final. Alice McSwegin failed to show cause against the decree for many times six months after reaching majority. That decree stood firm for more than thirteen years when the court entered the decree now appealed from. The former decree stands valid, not only because the time for appeal from it is gone, but the parties slept upon their rights and are guilty of *laches.* Both these children of Mrs. McSwegin were defendants to the cause from the first. The bill says that one was an adult when it was filed, and the other an infant over fourteen. It has been suggested, as an argument against allowing this decree the force of *res judicata*, that Alice H. McSwegin was an infant. In considering whether a decree against an infant, without *guardian ad litem*, is *res judicata*, the fact of infancy is immaterial, the decree being *res judicata* notwithstanding infancy. If infancy would render the decree utterly void, the decree would not be *res judicata;* but

a perfect multitude of authorities hold that a judgment or
decree against an infant is voidable only, and not void, and
cannot be attacked collaterally, but only by writ of error
or appeal.    10  Ency. Pl. & Prac. 630;  22 Cyc.  704; 1 Black
on Judgments, section 193; Freeman on Judgments, sec. 151;
*Porter* v. *Robinson*, 13 Am. Dec. 153 and note 159.    For this
reason the said decree against A. P. Howard and William R.
Hewitt is erroneous.

Another reason why that decree is erroneous is this.
The decree must rest on the theory that the land from which
that trust fund was to be raised had been wasted and lost,
or that its value should be charged to the executors for their
negligence, as if lost.  It is not needful to say whether the dis-
cretion as to the sale given the  executors by the will would
justify the delay in selling, or whether the change from three
years to "at any time," as provided in the codicil, as above
stated, would give them discretion covering so much time
for the sale.    However, we say that it was error to render
a personal decree against the executors in advance of the
sale.    If the executors could be made liable at all (they could
not because of such former decree) it would only be after
a sale of the land and its failure to bring enough to pay the
debts and raise the $2,000 fund.    The land was yet existent,
immovable and imperishable, and constituted the primary
means of raising that trust fund.    The decree allowed re-
imbursement to the executors out of the proceeds of the land
of the sum so decreed against them; but there stands the
absolute personal decree against them, and if the land
should not bring enough to pay debts and leave a surplus,
there would be nothing out of which the reimbursement of
the executors could be made.

Another reason why the personal decree against A. P.
Howard and William Hewitt is wrong is this, That giving
the land the value fixed by two reports of commissioners
and shown clearly by the evidence there would, in all appar-
ent probability, if not certainty, be nothing left from the
personal and real estate to go to the children of Hewitt. The
decree complained of fixed the value of one of the tracts at
$65 per acre, whereas two reports of commissioners and the
clear weight of evidence showed the tract to be worth only
$40 per acre at the death of the testator.    We think that the

case shows that no harm resulted to Elizabeth McSwegin or her children from the failure to sell the land, because there would be nothing going to them after payment of debts. They have lost nothing. If blame could be attributed to the executors for failure to sell, still equity would not charge them when it fairly appears that nothing was going to the children of Mrs. McSwegin. The case, in a moral point of view, does not show cause for blame to these executors. The call upon the conscience of a court of equity is very weak. By consent of all the devisees, by their solemn agreement, that certain of the children should take possession of the land and manage it to pay the debts, so as to save the home for the children, nearly all of whom resided upon the land and there made their home, the executors did omit to sell and allowed the children named in the agreement to take possession, and they paid large sums on the debts, by consent of creditors and would likely have succeeded in discharging them had not the children of Elizabeth McSwegin arrested their steps and demanded a sale after the passage of thirteen years. One of these children was adult when the bill was filed and let that decree stand for nearly thirteen years. The other after arriving at age made no assault upon the decree, made no complaint of the state of things, demanded no sale, until after the lapse of many years after attaining majority, and to come in at so late a day, to reverse everything that had been done, seems inequitable.

We therefore reverse so much of the decree of the 18th day of July, 1896, as decrees that James A. McKenzie, administrator of Edwin G. McSwegin, and Alice H. McSwegin do each recover from A. P. Howard and William Hewitt, executors of the will of Robert Hewitt, deceased, the sum of $764.32; and we remand the case to the circuit court for further proper proceedings not inconsistent with principles above stated.

*Reversed in part.   Remanded.*