# CHARLESTON.

## McSwegin v. Howard.

Submitted September 14, 1910.    Decided April 23, 1912.

1. EQUITY—*Pleading—Amendment—Effect of Delay.*
   An amended answer offered five years after the filing of the original answer is properly rejected, no excuse or reason being given for delay. (p. 784).

2. SAME.
   An amended answer, though containing cross bill matter, must be filed with reasonable promptness, and where long delayed without excuse is properly rejected. (p. 784).

Appeal from Circuit Court, Hancock County.

Bill in equity by J. D. McSwegin, administrator, against A.

P. Howard and others. From the decree plaintiff and others appeal.

*Reversed and Remanded.*

*E. A. Hart* and *John R. Donehoo,* for appellant.

*Alfred Caldwell* and *John A. Campbell,* for appellees.

Brannon, President:

This case, begun in 1890, has been twice in this Court before the present appeal. 63 W. Va. 92, and 66 W. Va. 570. In 63 W. Va. the facts and character of the case will appear. When the case returned to the circuit court a decree was entered declaring certain sums of money charges upon the fund coming from the sale of the land, which decree dates 6th April, 1910. From it J. D. McSwegin, administrator of Elizabeth McSwegin, James A. McKenzie, administrator of Edwin G. McSwegin, and Alice McSwegin appeal.

On the date of the decree McKenzie, administrator of Edwin G. McSwegin, and Alice McSwegin tendered an amended and supplemental answer and cross bill; but the court refused to allow it to be filed. This is assigned as error. This answer sought to charge rents and profits against those of the children who occupied the land. As an amended answer there are several reasons why its rejection is not error. It came too late. The bill was filed in May, 1890, twenty years before this answer was offered. Edwin and Alice McSwegin had before filed an answer in January, 1905, asking no rents and profits. This subject was not in the bill. An amended answer should not be allowed raising new issues where it appears that the party knew the facts, and is thus guilty of negligence. *Goldsmith* v. *Goldsmith,* 46 W. Va. 426. No excuse was shown for delay. *Fouty* v. *Poar,* 35 W. Va. 70; *McKay* v. *McKay,* 33 W. Va. p. 376. Viewed as a cross bill it came too late. No excuse was given for delay. *Baker* v. *Oil Co.,* 7 W. Va. 454; Barton's Ch. Pr. 320; 5 Cyc. 653. This answer does not appeal to a court, because it reopens old transactions not in the bill or first answer.

The material question in the case arises upon the assignment as error, that the court decreed payment out of the estate funds

of wages accruing under the verbal agreement for the farm operations as debts of preference over legacies. This refers to money decreed to William Hewitt and R. Brown Hewitt, $5,-313.10 each, and to children of Anna Howard, $317.44, as wages for services of William, R. Brown and James Hewitt in managing the land after the testator's death under an agreement between his children stated in 63 W. Va., p. 93, under which three of the sons, William, R. Brown and James Hewitt were to manage the land and pay the debts and retain the land for the children of the testator, Robert Hewitt, instead of selling it as directed by his will. I do not interpret the assignment of error as contesting the decree in its provision for payment of what is called wages for service rendered the testator in his life time, given by will and charged by it on the land. Surely there would be no color for that. But the question is, Does the decree err in paying said sums to William and R. Brown Hewitt and to the children of Anna Howard, for such service in managing the land? Just here I note the fact that that arrangement for the management of the land has no binding force on the children of Elizabeth McSwegin. They were infants, very young when it was made, not parties to it. Their mother did participate in it; but she had only a life estate, her children the remainder. No one claims that that arrangement puts any obligation on them; all conceded that it does not; the decree of July, 1906, while holding effective that arrangement for the operation of the farm expressly declares that they were not bound by it. Therefore, there was no liability on them for those *post mortem* wages. That farm arrangement was contrary to the will, and if binding on the adult parties making it, could establish no liability on the McSwegin infant children. Therefore, the decree appealed from, that of 6th April, 1910, is erroneous as to the McSwegin children, the only appellants, unless the former decree of 1906 can be held to have adjudicated the right of William and R. Brown Hewitt and children of Anna Howard to the money decreed for such wages or services for managing the farm as against the McSwegin children; for if the decree of 1906 be held as so adjudicating against the children, however erroneous as to those children, it is *res judicata,* an appeal from it is barred by limitation, and the decree of

1910 in decreeing those moneys to be paid is not erroneous, because it would then be only executing and carrying out the decree of 1906. But we hold that the decree of 1906 does not adjudge those wages for managing the farm against the McSwegin children. In the decree the court recites the agreement as one between the legatees "(excepting the said children of Elizabeth McSwegin)", and says that under that agreement the "said distributees, excepting the said children of the said Elizabeth McSwegin," took and held the real estate in lieu of the bequests in the will of Robert Hewitt, and there was no liability on the executors for debts of the estate, thus holding that agreement valid as against its parties, excepting those children. Now, can we think, in the face of this exception that the court intended, or that its decree is to be construed as intending, to make those McSwegin children liable for the management of the farm? It is plain that the court intended to relieve them from such liability. Again, this is fortified by other features of the decree. One clause declares the amounts due to various children by virtue of the will allowing pay for services for them after their majority, rendered to their father, which I would call testamentary wages, and in words decrees that those sums "constitute and are valid debts against said real estate and personal property." Another clause ascertains what it calls "expenses of the trust arrangement under and by which the farm operations were carried on as reported by the commissioner," fixing amounts; but the decree does not, as in the case of the testamentary wages, declare them valid debts against the property. As to those sums it was likely intended to fix the amounts going to certain named persons as an adjudication between those who made the agreement for operating the farm; but surely it did not intend to make those sums payable out of the assets as against the McSwegin children, when the court had just excepted them from all obligation under that farm arrangement, by saying that they were not parties to it. The commissioner did not report them as binding debts, but in words said that he did not intend to do so.

It seems to us reasonably plain, taking the words of the decree of 1906, that it was not intended to charge to the McSwegin children services in management of the farm after the testator's

death.  But there is a doubt; suppose that the construction of the decree is not so plain.  Should we so construe it as to be erroneous and promote injustice?  Rather we should so interpret it as to conform to law and justice.  These children were never bound for any part of such service in the management of the farm.

The McSwegin children alone appeal.  No one else complains of the decree.  We decide the case only as to them.  We hold that the decree of 1906 does not hold them bound for such farm wages.  As to them the decree of 1910 is erroneous in construing the decree of 1906 as holding them chargeable with farm wages. I suppose that was the reason of so decreeing the farm wages. If not, then as an original decree on the subject the decree of 1910 is erroneous.  The assets of the estate cannot, as to the McSwegin children, be lessened by payment out of them of the sums decreed to William Hewitt, R. Brown Hewitt and the children of Anna Howard for compensation for farm service.

Therefore we reverse the decree of 6th day of April, 1910, as to the appellants, and remand the case in order that their rights in the assets of the estate of Robert Hewitt may be ascertained and decreed according to the principles above stated.

*Reversed and Remanded.*