## Adkins, et al. v. Adkins, et al.

(Decided October 27, 1916.)

## Appeal from Pike Circuit Court.

1.   Deeds—Failure to Fulfill Condition Subsequent—Action by Heir to
     Set Aside.—The right of a grantor to maintain a suit in equity
     to set aside a deed, because of the failure of the grantee to ful-
     fill a condition subsequent, upon which the deed rests, to fur-
     nish support to the grantor during life, as a rule descends to
     the heir, but, if the grantor does not provide for a reversion, for-
     feiture or right of re-entry for failure of the condition subsequent,
     but only reserves a remedy for the failure, which is personal to
     himself, and during life elects not to exercise the remedy; after
     his death, the heir can not maintain a suit to set aside the deed,
     where the deed was not procured by fraud or duress, and the
     grantor was mentally capable of contracting.
2.   Deeds—Condition Subsequent.—Where a deed vests title in the
     grantee upon its delivery, and is conditioned upon the grantee
     furnishing support for the grantor during his life, the condition
     is a continuing one, which can not be fulfilled until the death of
     the grantor, and is a subsequent condition.
3.   Deeds—Action by Heirs to Set Aside Deed.—The right of the
     grantor to maintain a suit, in equity, to set aside a deed, be-
     cause of fraud or duress in the procurement of its execution, or
     want of mental capacity of the grantor to contract, descends to
     the heir, for the reason, that the fraud, duress or want of capa-
     city to contract, being present, the title of the grantor never passes
     to the grantee, and descends to the heirs from the grantor.

H. S. HOWARD, F. W. STOWERS and SAM C. STOWERS for
appellants.

J. S. CLINE, E. J. PICKELSIMER and ROSCOE VANOVER for
appellees.

OPINION OF THE COURT BY JUDGE HURT.—Affirming.

Winright Adkins owned a tract of land consisting of
of about one hundred and forty-four acres, on Greasy
Creek, in Pike county, upon which he resided, in 1885.
His wife, Nancy Adkins, and his sons, L. G. or Grant
Adkins and William Adkins, resided with him. L. G.
Adkins was his youngest child, at that time, and was
twenty or twenty-one years of age. Winright Adkins
had been married, previous to his marriage with Nancy,
and by his first marriage there were five children.
Nancy Adkins was the mother of seven children by Win-
right Adkins, and two by a former marriage, one of
whom was the appellee, John Gillespie. On the 13th

day of October, 1885, Winright Adkins was somewhere from sixty-four to sixty-nine years of age, when he executed and delivered a deed to his son, L. G. Adkins, for the tract of land upon which he then lived. The portions of the deed which set up its terms and conditions and consideration were as follows:

"Witnesseth, that said party of the first part, for and in consideration of the sum of taking care of me and his mother as long as we both live, and to provide for said Winright Adkins and Nancy Adkins, his father and mother, with such things that is suitable, as long as they both live, and Winright Adkins is to have and keep possession of the land and full control of it until his death, do hereby sell and convey to the party of the second part, his heirs and assigns. the following described property, to-wit: . . . . . . . which said Leonard G. Adkins is to have no possession of said land until the death of Winright Adkins, his father, and if the said party of the second part fails to comply with the foregoing agreement, then on his failure the parties of the first part has the right to sell the land for their support."

"To have and to hold the same together with all the appurtenances thereunto belonging unto the party of the second part, his heirs and assigns, forever."

Then follows the clause by which the grantor covenanted to warrant the title to the party of the second part and his heirs and assigns forever, against the claims of all persons. Then follows this clause:

"A lien is retained upon the property hereby conveyed as security for the performance of the above contract. This deed is not to take effect until the death of Winright Adkins."

Winright Adkins and his wife, Nancy, and L. G. Adkins continued to live as they were then living upon the farm and in the dwelling house upon it for three or four years thereafter, when Nancy Adkins died. A few months thereafter L. G. Adkins married and brought his wife to live with him and his father. Shortly thereafter, either in the year 1888 or 1889, the proof does not definitely show, Winright Adkins married a third time, and brought his wife, Elizabeth Harris, to live in the same house. Father and son and their wives resided in the same house for about one year, when L. G. Adkins, as he claims, by his own efforts, and as the widow of Winright Adkins claims, with the assistance of his father and

other members of the family, built upon the land a new
log house.. The logs were procured upon the land. Win-
right Adkins and his wife then removed to this new
house, leaving L. G. Adkins and his wife in the old resi-
dence. The wife of Winright Adkins, at the time of their
marriage, was the mother of four children, and was com-
paratively a young woman. The youngest of these four
children, who was about three or four years of age, at
that time, she brought to reside with her, when she be-
came the wife of Winright Adkins. After she married,
she became the mother of five other children, the result
of her marriage. Upon the removal of Winright Ad-
kins and his wife to the new house, by some kind of ar-
rangement, either express or by mere acquiescence, L.
G. Adkins apparently took control and possession of
about one-half of the land, which he used and cultivated
thereafter. The father had the use and control of the
other one-half of the land, which included a small corn
mill upon the land, and he retained the control and pos-
session of that part of the land until his death, in April,
1903.

In February, 1903, at the solicitation of Winright
Adkins, he and L. G. Adkins, by a joint conveyance, sold
and conveyed the minerals in the lands to the Northern
Coal & Coke Co., for which the company paid to L. G.
Adkins the sum of two hundred and one dollars and
seventy-five cents. It was agreed between Winright and
L. G. Adkins that the consideration received for the sale
of the minerals should be equally divided between them.

After the death of Winright Adkins, L. G. Adkins
either instituted or threatened the institution of pro-
ceedings to secure the possession of the portion of the
land which his father had retained the possession of until
his death, when, by arrangement with the widow of his
father, he paid her twenty dollars to give up the posses-
sion and she removed from the land. The five children
of Winright Adkins by his last marriage were then all
infants and the younger ones of them were of very ten-
der years.

The father and son each cultivated crops upon his
respective half of the land, and each procured firewood
from it, and the proof shows the son oftentimes assisted
to a more or less extent in the cultivation of the crops
planted by his father, and his father and wife and chil-
dren frequently assisted the son in his work in his crops.

It is claimed by the appellants that the appellee, L. G. Adkins, wholly failed to provide for his father, as was stipulated in the deed under which he held the land, and that during all the time, up to the death of his father, he failed to render him any assistance or to provide him with clothing or with money or with the necessities of life, except a barrel of flour and a small amount of bacon and coffee upon one occasion, and paid for his burial at his death. Upon the other hand it was claimed by the appellees, that from the time of the making of the deed to the death of Nancy Adkins, that the appellee, L. G. Adkins, entirely maintained his father and mother and after his father's marriage the third time and until his death, that he contributed to the support of himself and family to the extent of his ability, and furnished to his father a sufficiency to have maintained him alone, but not a sufficiency to maintain him and his wife and children; that the aid and assistance and things furnished by him to his father were twice the value of the farm in controversy.

Both father and son cut and sold from the land timber trees without consulting the other, so far as the proof tends to show.

The proof showed upon the side of the appellants that Winright Adkins maintained himself and family and had as plenty of food and clothing as other people in their station of life in the community, up until about one and one-half years previous to his death, and that after that time he was unable to labor or to do anything for his support, and that he was oftentimes almost destitute of both food and clothing, while the evidence for appellees tended to prove that up until the time of his death he and his family had such food and clothing as people in their station of life in the community ordinarily had.

Winright Adkins, never at any time, attempted to make any sale of the land or any part of it for his support, in exercise of the power he had reserved in the deed, nor did he at any time attempt to institute any suit against his son to enforce any lien upon the land for his support and maintenance, in accordance with the right to do so, which he had reserved in the deed. It is shown that a short time before his death that he requested his son to convey a part of the land to his son, Isaac Adkins, one of the appellants who was then a boy, which L. G. Adkins refused to do. It is, also, shown that Win-

right Adkins made a visit to Pikeville to consult with an attorney in regard to obtaining a cancellation of the deed he had made to L. G. Adkins, but never instituted any suit for that purpose. He never made any demand upon L. G. Adkins, to give up the lands to him, nor ever notified him, that he claimed a forfeiture for failure to render him a support.

It was, also, proven, that a short time before his death, while very feeble, he complained that his son, L. G. Adkins, was not furnishing him with support, while it is proven by others that he stated on other occasions that L. G. Adkins had fully performed his obligations to him. The proof fails to show, that he ever requested L. G. Adkins to furnish him anything, except upon one occasion, to give him some money, and this was complied with.

In 1909 L. G. Adkins sold and conveyed a part of the land to appellee, John W. Gillespie, for which he received the sum of four hundred dollars. Gillespie took possession of the portion of the land which he purchased and built thereon a small house and stable, the value of which is variously estimated by the witnesses from three hundred and fifty to six hundred dollars.

L. G. Adkins removed the house in which his father had lived and attached it to the house where he lived. He, also, removed the timber and rendered fit for cultivation a portion of the land.

On the 15th day of April, 1912, Isaac Adkins, who was a son of Winright Adkins by his last wife, and the other four children by that marriage, and three of his children by former marriages instituted this suit against L. G. Adkins and John W. Gillespie, in which they alleged that L. G. Adkins had wholly failed to provide for and maintain his father in a suitable manner, and had failed and refused to perform the obligation, which was the consideration for the conveyance to him of the land and for that reason the consideration promised for the land had entirely failed, and that John W. Gillespie knew of the failure of the consideration for the deed and with that knowledge had purchased a portion of the land, and they prayed that the deed be cancelled, and the land adjudged to be the property of the appellants and for an accounting of the rents and profits of the land while it had been in the possession and use of L. G. Adkins. It was alleged that the other heirs of Winright

Adkins had received from him in the way of advancements property during his lifetime; that plaintiffs had received nothing from his estate, and if they should secure all that was sought by this suit, the portions, which had been received by the other heirs would exceed in value the portions which the plaintiffs or either of them would receive.

The appellees, L. G. Adkins and John W. Gillespie, filed a joint answer, in which they traversed the material allegations of the petition, and Gillespie for a further defense alleged that at the time he purchased the portion of the land and paid therefor he was a bona fide and innocent purchaser for the full value of the land purchased by him, and that he had no knowledge or information at the time of any claim of the plaintiffs to it, and in good faith believed that L. G. Adkins had a good title to the land and could make him a good title therefor.

The case was submitted upon the pleadings and testimony, a great deal of which was incompetent, but was permitted to be read without objection, and the court adjudged that the appellants had failed to demonstrate any right to relief, and ordered their petition to be dismissed, and from that judgment they have appealed to this court.

At the beginning of the consideration of this case we are confronted with the question as to what kind of an estate the deed from Winright Adkins to L. G. Adkins vested in the latter, if any, and if he failed to perform the obligation in the deed to maintain his father, can the appellants maintain an action to rescind the contract between the father and son, as embraced in the deed, and to have the deed set aside, and the other relief sought in the petition? Considering the deed, as a whole, and all of its terms, and determining therefrom the meaning of the deed and the intention of the parties, it is clear that it was the intention of the grantor to vest the title to the land in the grantee, when he delivered the deed to him, but he reserved the possession and control of the land until his death. If it was not intended to vest the title to the land in the grantee at the making of the deed, it would have been useless to have reserved the possession and control during the life of the grantor, or to have reserved a lien upon it or a right to sell it for main-

tenance. The consideration for the execution of the deed was that the grantee would provide for the grantor and his, then, wife, during their lives, a support, which was suitable to their station and condition in life. The consideration of maintenance was a continuing consideration, which could not be discharged by the grantee, until such time as the grantor and his, then, wife should die. The performance of the acts which would discharge the consideration necessarily coming after the vesting of the title, was a subsequent condition upon which the conveyance rested. To secure the performance of the consideration, the grantor expressed in the deed two reservations, the one, to sell the land for his support, if the grantee failed to provide it, and the other a lien upon the land to secure the providing of a support by the grantee. There was no provision for a reversion of the land to either the grantor or his heirs upon a failure of the continuing consideration.

This character of action must be distinguished from the action at law, which may be prosecuted to recover lands, on account of a breach of a condition subsequent in the deed, and where a forfeiture or a right of re-entry is provided in the deed for the breach. In such cases, except for damages for the breach, a demand must be made for the property, of the grantee, or some act equivalent to a re-entry, as provided by the common law, is required before the action can be maintained. The older doctrine was that upon a breach of a condition subsequent, that the grantor must, in order to divest the title of the grantee, re-enter the granted premises before he could maintain an action for the recovery of the premises, but according to the modern weight of authority, a demand for the premises, or a notification that the grantor is claiming them on account of the breach of the condition subsequent is sufficient to authorize the action to be maintained, where the breach works a forfeiture. Preston v. Bosworth, Am. St. Rep. 313; Ellis v. Elkhart Car Works Co., 97 Ind. 247; Mash v. Bloome, 14 R. 1188 (N. S.); Olcott v. Dunkle, 16 Vt. 478.

This character of action must, also, be distinguished from the action in equity in this jurisdiction, which can be maintained by a grantor or his heirs against a grantee to rescind a deed, and to place the parties in *statu quo,* where the deed was procured by fraud or duress, or

where the grantor was mentally incapable of contracting. In such cases, the heir, after the death of the grantor, may proceed upon the ground that the fraud, duress, or want of mental capacity to contract was such that while in the hands of the grantee the title to the property had never passed from the grantor, and there is no necessity of a revesting of the title in the grantee, or upon his death in his heirs, as it descends to his heirs at the death of the grantor.

This action is not based upon any claim of fraud or duress by the grantee in the procurement of the execution of the deed, nor any want of mental capacity in the grantor to contract. The title to the land vested in the grantee upon the delivery of the deed, conditioned upon the subsequent condition of his providing a suitable support for the grantor during his subsequent life. The commonly accepted doctrine is, and ordinarily, when a condition subsequent for the support of the grantor is breached by the failure or refusal of the grantee to perform the condition, the grantor may maintain an action to rescind the deed and restore the property to the grantor, and the grantor's right to rescind a deed for the failure by the grantee to perform a subsequent condition upon which the deed rests, descends to the heirs of the grantor, in the event of his death. White v. Bailey, 23 L. R. A. 232 (N. S.); Fluharty v. Fluharty, 54 W. Va., 407; Cross v. Carson, 44 Am. Dec. 742; Thomas v. Record, 74 Am. Dec. 500; Goldsmith v. Goldsmith, 46 W. Va. 426. The estate created by the deed having vested in the grantee, there is nothing left to the grantor, except the possibility of the estate reverting to him when the condition is broken.

In this jurisdiction, where the grantee, in a conveyance conditioned for support, refuses or neglects to perform the condition, the courts of equity will rescind the contract, set aside the deed, or in some way restore the property to the grantor. Reeder v. Reeder, 89 Ky. 529; Jenkins v. Jenkins, 3 Mon. 327; Scott Heirs v. Scott, etc., 3 B. M. 2; Lane, etc. v. Lane, etc., 106 Ky. 530, 13 Cyc. 710. As to whether or not in this jurisdiction the grantor's cause of action to rescind the deed because of the failure of the condition subsequent for support, in the absence of fraud or duress in the procurement of the deed by the grantee, or want of mental capacity to contract by the grantor, depends upon the terms of the

deed. The deed is the written testimonial of a contract, and it must be apparent that, whether the heirs of a grantor may treat a breach of a condition subsequent for support, in the deed, as a forfeiture, and a court of equity restore the *statu quo,* is dependent upon the terms of the contract, as expressed in the deed. If the grantor and grantee, contracting at arm's length, agree upon what character of estate the grantee is to receive, and what remedy the grantor may have in the event of a nonfulfilment of a condition subsequent for maintenance, why shall not the grantor and his heirs be bound by the contract? If an estate is vested in the grantee, and no reversion is provided for to either the grantor or his heirs, and the grantor reserves only a remedy, which is personal to himself for the nonfulfilment of the subsequent condition, the remedy cannot descend to his heirs. In the instant case, there was no forfeiture or reversion of the land provided for, and no right reserved to re-enter the premises in the event of the breach of the condition for support. In the absence of a provision for a forfeiture or reversion, the right to rescission would still exist, but the absence of provision for a reversion and where a remedy was reserved, which the grantor might alone exercise, it seems that the remedy does not descend to the heirs. In Arnett v. McGuire, 23 R. 2319, the deed was executed upon the consideration that the grantee would support the grantor and her imbecile son. The grantor, without providing any reversion of the land for the failure of the condition to render the support, reserved the right in the event of the failure of the condition to contract with other parties for such support, it was held that this was a right personal to the grantor, and if she failed during her lifetime to exercise it, her heirs, after her death, did not have the right to maintain an action to set aside the deed. In the instant case, the grantor reserved the right to sell the land in the event of the failure to perform the condition for support, or to enforce a lien against it, but he attempted to exercise neither remedy during his lifetime. The right reserved to sell the land was a remedy personal to himself, and the right to enforce a lien did not descend to his heirs. He had a right to waive the remedy, which was personal to him, and if he did so his heirs cannot complain.

The judgment is affirmed.