## Manning et al. v. Street.

June 20, 1939.

C. H. Wilson, Judge.

E. M. Nichols for appellants.

C. J. Waddill for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming in part and reversing in part.

Charlotte Pursley and Brice Pursley owned jointly three lots in Dawson Springs. A residence was located on one of the lots. Brice Pursley died in 1930, or 1931, leaving a will devising his undivided interest in the property to his wife, Charlotte. On December 9, 1932, Charlotte conveyed the property to John Street by deed in which the recited consideration was:

"($1.00) One Dollar cash in hand paid, and other valuable consideration, the considerations are as follows: The said John Street agrees and binds himself to properly provide all necessaries for the comfort of the party of the first part so long as she may live both in sickness and health, the latter reason being the major part for this conveyance, but not to have possession of the property until after the death of the said party of the first part."

On January 26, 1933, Charlotte Pursley and John Street were married, and on April 4, 1934, Charlotte Pursley Street died intestate, leaving as her only heirs at law Olive Manning, a sister, and Pearl Taylor, a sister of the half blood. On May 23, 1934, Olive Manning and Pearl Taylor brought an action in the Hopkins circuit court against John Street to cancel the deed of December 9, 1932, and to have the marriage of January 26, 1933, set aside and declared null and void on the ground that Charlotte Pursley was without mental capacity to make a deed or to enter into a marriage contract, and that she was induced to sign the deed and

enter into the contract of marriage by undue influence and fraud on the part of John Street. They also asked that the deed be canceled and set aside for failure of consideration. All of the parties are negroes.

A considerable amount of proof was heard on the question of Charlotte Street's mental capacity at the time the deed was executed and at the time the marriage ceremony was performed, and also on the question of failure of consideration. The chancellor adjudged that the decedent was of sound mind on December 9, 1932, when she executed the deed of conveyance to John Street, and on January 26, 1933, when the marriage ceremony was performed, and that the marriage was valid. He canceled the deed, however, on the ground that the defendant, John Street, after its execution and delivery, failed to support and maintain the decedent during the remainder of her life as the deed provided he should do. He further adjudged that the plaintiffs, Olive Manning and Pearl Taylor, were the only heirs at law of Charlotte Pursley Street and were the owners of the real estate described in the petition, subject to the right of curtesy therein of the defendant, John Street, as the surviving husband of the decedent. The plaintiffs have appealed from so much of the judgment as upheld the validity of the marriage on the ground of mental capacity, and the defendant has cross-appealed from so much of it as canceled the deed for failure of consideration.

It is appellants' contention that the evidence as to Charlotte Pursley's mental capacity for two or three years prior to her death and on January 26, 1933, is not merely conflicting, but preponderates to the effect that she did not have sufficient mental capacity to enter into the marriage contract. The decedent was in ill health at the time of her marriage to John Street, and was confined to her bed most of the time for two or three years before her death in April, 1934. A number of relatives and neighbors testified that during the last two or three years of her life her mind was unsound, but on cross-examination most of them stated that her mental condition was good at times during this period. They based their opinions chiefly on the fact that at times her mind seemed to wander from the subject under discussion. Olive Manning, sister of the decedent and one of the plaintiffs, testified that she was present at the marriage of her sister and John Street and served

as one of the witnesses. On that occasion John Street borrowed $10 from her to pay for the marriage license. She also stayed at her sister's home from November 24, 1933, until February 23, 1934. She did not claim that her sister was mentally unsound at the time of the wedding or during her visit a year later. The other plaintiff, Pearl Taylor, did not testify. A fair sample of the testimony of the lay witnesses who stated the condition of decedent's mind was bad is the following by Jim Rutledge:

> "Well just to tell you the truth about it now listen. Here is the whole story,—Mrs. Pursley was kinda sick along about then, and Willie worked up at the garage with me, and I used to go by to see her practically every day. I used to call her Mrs. Pursley, and she got mad about me calling her 'Pursley.' She had married and I didn't know it at first, and she got mad at me calling her 'Pursley.' I said, 'Willie, your Aunt is crazy and sick and swollen up.'"

Again he said:

> "Some time I would be standing talking to her, she would talk off, about first one thing then another, sometimes bawl me out. Some days she would talk to me a few minutes and talk off about something else. I used to tell Willie 'your Aunt Charlotte is crazy.'"

Dr. N. C. Henderson testified that he treated decedent professionally from April 19, 1932, until December 14, 1932, and that during this period of time she was suffering from a large pelvic tumor, kidney condition, and cardiorenal condition. He stated that, in his opinion, she was mentally unbalanced, and did not have sufficient mental capacity in 1932 to execute a legal document such as a deed. He was asked if, in his opinion, she had sufficient mental capacity on January 26, 1933, to know the legal effect of her act in entering into a marriage ceremony, and he answered:

> "I believe that she did have mental capacity to know that she was getting married, but do not believe she realized the effect it would have on her property or anything she owned."

I. N. Day, president of the Commercial Bank of Dawson, testified that he had known the decedent for

many years. She sent for him in December, 1932, and requested him to prepare a deed conveying her property to John Street. No one else was present, and she told him the consideration she wanted put in the deed. He returned to the bank and prepared the deed according to her directions, and Mr. J. I. Hosick, a notary public, went to decedent's home and took her acknowledgment. Both Mr. Day and Mr. Hosick testified that decedent had sufficient mental capacity to execute a deed. Dr. William F. Stucky, a physician of Dawson Springs, testified that he was called upon to treat Charlotte Street on April 11, 1933, and that he treated her from then until her death in April, 1934. Dr. L. O. Young, a physician of Dawson Springs, also treated the decedent during the spring and early summer of 1933. Both Dr. Stucky and Dr. Young testified that the decedent's mind was sound during all the time they treated her and that she had sufficient mental capacity to enter into a marriage contract. There was some conflict in the evidence on the question of mental capacity, but we think there was ample evidence to sustain the chancellor's finding that the decedent had mental capacity sufficient to contract a valid marriage. Gellert v. Busman's Adm'r, 239 Ky. 328, 39 S. W. (2d) 511.

The argument is also advanced that the marriage was void because it was not solemnized by a person authorized by statute to perform the marriage ceremony. Section 2097, subsection 4, Kentucky Statutes, provides that a marriage shall be void when not solemnized or contracted in the presence of an authorized person or society. Rev. F. P. Kelly performed the ceremony, and a deputy county court clerk of Hopkins county testified that he had been unable to find any record in the county clerk's office showing that Rev. Kelly had obtained a license to solemnize marriage or had executed the bond required by Section 2104 of the Kentucky Statutes. Section 2104 reads in part:

"No minister or priest shall solemnize marriage until he has obtained a license therefor from the county court of the county in which he resides."

Section 2102, Kentucky Statutes, reads:

"No marriage solemnized before any person professing to have authority therefor shall be invalid for the want of such authority, if it is consummated with the belief of the parties, or either of them, that

he had authority and that they have been lawfully married.''

Appellants argue that the evidence tends to show the marriage was not consummated. But, waiving that question, the appellants failed to prove that Rev. Kelly was not authorized to perform the ceremony. They offered proof to the effect that he had not obtained a license in Hopkins county to solemnize marriage, but there was no proof that he was a resident of Hopkins county or that he had not obtained a license in the county of his residence. The presumption of the legality of the marriage was not overthrown by appellants' proof. Botts v. Botts, 108 Ky. 414, 56 S. W. 677, 961, 22 Ky. Law Rep. 109, 212; Scott v. Scott, 200 Ky. 153, 252 S. W. 1019.

On the cross-appeal appellee insists the court erred in canceling the deed because (1) the evidence was not sufficient to show a failure of consideration; and (2) the right of rescission was personal to the grantor and did not pass to and vest in her heirs. The proof for appellants was that John Street rendered no service of any kind to the grantor after the execution and delivery of the deed; that he furnished no provisions; and did not look after her comfort. On the other hand, her neighbors, friends, and relatives rendered the services which he contracted to perform. He testified that he furnished provisions and looked after the grantor's comfort from the time the deed was executed, but the weight of the evidence sustains the chancellor's finding on the question of failure of consideration. Appellee cites Arnett v. McGuire, 67 S. W. 60, 23 Ky. Law Rep. 2319, in support of his contention that the grantor's heirs cannot maintain an action to cancel the deed. In that case Eliza McGuire conveyed a tract of land to her son, James McGuire, the consideration being that the grantee should move into the dwelling house occupied by the grantor and take special care of and support his mother and his imbecile brother, John McGuire. In the event the grantee failed to render the services stipulated in the deed, the grantor reserved ''the exclusive right to contract with other persons to perform what the said James McGuire has herein bound himself to do and perform.'' It was held that the grantor's heirs had no rights in the premises that were reserved by the grantor. The decision in that case is to the effect that a deed in which the consideration is services to be rendered and support to

be furnished and in which the grantor reserves a remedy in the event the grantee fails to perform his obligation can only be rescinded by the act of the grantor, but appellants argue that where no remedy is reserved by the grantor for a breach of the contract, the right of rescission survives and vests in the grantor's heirs, and they cite and rely upon the following statement in Adkins v. Adkins, 171 Ky. 762, 188 S. W. 843, 846:

"The commonly accepted doctrine is, and ordinarily, when a condition subsequent for the support of the grantor is breached by the failure or refusal of the grantee to perform the condition, the grantor may maintain an action to rescind the deed and restore the property to the grantor, and the grantor's right to rescind a deed for the failure by the grantee to perform a subsequent condition upon which the deed rests descends to the heirs of the grantor, in the event of his death. White v. Bailey, 65 W. Va. 573, 64 S. E. 1019, 23 L. R. A. (N. S.) 232; Fluharty v. Fluharty, 54 W. Va. 407, 46 S. E. 199; Cross v. Carson, 8 Blackf. (Ind.) 138, 44 Am. Dec. 742; Thomas v. Record, 47 Me. 500, 74 Am. Dec. 500; Goldsmith v. Goldsmith, 46 W. Va. 426, 33 S. E. 266."

This is upon the theory that in conveyances of this character, where the sole or chief consideration is support and maintenance of the grantor during the remainder of his life, the agreement to support the grantor is a condition subsequent to be performed, and the conveyance will be defeated by a breach of the condition. There is conflict in the authorities on the subject, and some courts hold that an agreement for support and maintenance of the grantor as consideration for a deed is a covenant for the breach of which the grantor has an adequate remedy by an action for damages, while others hold that such an agreement amounts to a condition subsequent and if the condition is breached the right to a cancellation of the deed passes to the grantor's heirs. Kroening v. Kroening, 223 Wis. 113, 269 N. W. 536; Federal Land Bank of Louisville v. Luckenbill, 213 Ind. 616, 13 N. E. (2d) 531; Kramer v. Mericle, 195 Iowa 404, 192 N. W. 257; First National Bank v. McIntosh, 201 Ala. 649, 79 So. 121, L. R. A. 1918F, 353; Poole v. Woody, 132 Kan. 186, 294 P. 669; Fox v. Starbuck, 117 W. Va. 736, 188 S. E. 116; Tiffany, Real Property, volume 1, Section 89, page 329, annotation in 23

L. R. A., N. S., 232, annotations in 76 A. L. R. 742 and 112 A. L. R. 670. This court has held that the grantor may maintain an action to cancel a deed of this character where the grantee fails to perform his obligations though no special remedy is reserved. Wireman v. Wireman, 259 Ky. 120, 81 S. W. (2d) 908; Watson v. Gilliam, 252 Ky. 762, 68 S. W. (2d) 399; Alvey v. Alvey, 97 S. W. 1106, 30 Ky. Law Rep. 234; Reeder v. Reeder, 89 Ky. 529, 12 S. W. 1063, 11 Ky. Law Rep. 731. In the Restatement of the Law of Property, volume 1, Section 24, condition subsequent is defined as follows:

"The term 'condition subsequent' denotes that part of the language of a conveyance, by virtue of which upon the occurrence of a stated event the conveyor, or his successor in interest, has the power to terminate the interest which has been created subject to the condition subsequent, but which will continue until this power is exercised."

In Section 45 of the same volume it is said:

"An estate in fee simple subject to a condition subsequent is created by any limitation which, in an otherwise effective conveyance of land,

"(a) creates an estate in fee simple; and

"(b) provides that upon the occurrence of a stated event the conveyor or his successor in interest shall have the power to terminate the estate so created."

See, also, Restatement of the Law of Property, volume 2, Section 155.

The strict rules of construction usually applied to conveyances of land which are claimed to be upon conditions subsequent probably should not be followed in cases of this nature. However, before a promise of support and maintenance is construed as a condition subsequent, of which the heirs of the grantor can take advantage, there should be some language in the deed either expressly or impliedly indicating that the performance of such promise was intended by the parties to be a condition subsequent, upon the breach of which there should be a failure of the grantee's title. In this class of cases there is frequently no adequate remedy at law and only equity can provide relief, and, where the circumstances and the language of the instrument authorize the infer-

ence that the consideration named therein was intended by the parties to be a condition subsequent, that relief should extend to the heirs of the grantor where the grantee has failed to perform his obligations. He should not be permitted to enrich himself unjustly at the expense of the grantor and the grantor's estate by assuming obligations which he probably had no intention to perform. The statement from Adkins v. Adkins, supra, heretofore quoted, was obiter dictum, since, in that case, the grantor reserved the right to sell the land in the event of the failure to perform the condition for support or to enforce a lien against it, but he attempted to exercise neither remedy during his lifetime, and it was held that the right reserved to sell the land was a remedy personal to the grantor and the right to enforce the lien did not descend to his heirs. In the course of the opinion it was said:

> "The deed is the written testimonial of a contract, and it must be apparent that, whether the heirs of a grantor may treat a breach of a condition subsequent for support in the deed as a forfeiture, and a court of equity restore the statu quo, is dependent upon the terms of the contract, as expressed in the deed. If the grantor and grantee, contracting at arm's length, agree upon what character of estate the grantee is to receive, and what remedy the grantor may have in the event of a nonfulfillment of a condition subsequent for maintenance, why shall not the grantor and his heirs be bound by the contract? If an estate is vested in the grantee, and no reversion is provided for to either the grantor or his heirs, and the grantor reserves only a remedy, which is personal to himself for the nonfulfillment of the subsequent condition, the remedy cannot descend to his heirs. In the instant case, there was no forfeiture or reversion of the land provided for, and no rights reserved to reenter the premises in the event of the breach of the condition for support."

In the present case, the grantor did not reserve the right to re-enter the premises in the event of the breach of the condition for support, and there was no provision for a reverter. There is no language in the deed and no circumstances surrounding the transaction tending to indicate that the parties intended the provision for support as a condition subsequent upon breach of which

the grantee's title should fail. Six weeks after the deed was executed, the grantor and grantee were married and lived together as husband and wife until the grantor's death more than a year later. Under these circumstances the provision for support in the deed should not be construed as a condition subsequent authorizing the heirs of the grantor to maintain an action for rescission of the deed on the ground that the condition had been breached.

The judgment is affirmed on the appeal, and reversed on the cross-appeal. Whole Court sitting.